**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-02840-STV

JAMES RICHARD STONE,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter is before the Court on Plaintiff James Stone's Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381 and 1383c. [#1] The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. [#14] The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#11], the parties' briefing [##15-16, 19], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal. For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

I.	**LEGAL STANDARD**

A.	**Five-Step Process for Determining Disability**

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[1]  42 U.S.C. § 423(d)(1)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment."  *Lax*, 489 F.3d at 1084.  "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B).

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled."  *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005).  The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

---

[1] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510; *see also* 20 C.F.R. § 404.1572.

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[2]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite his impairments—is sufficient to allow the claimant to perform his past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. § 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that the claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

**B.    Standard of Review**

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*,

---

[2] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c).

849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II. BACKGROUND

Plaintiff was born in 1967. [AR 98, 178][3] Plaintiff completed tenth grade [AR 202] and can communicate in English [AR 200]. On or about September 29, 2014, Plaintiff filed a Title XVI application for SSI [AR 178], claiming a disability onset date of August 1,

---

[3] All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case. [#11]

2009, which was later amended to August 14, 2014.[4]  [AR 12, 99, 178, 197; *see also* AR 34]  Thus Plaintiff was just under 47 years old at the time of the alleged onset.  [AR 24]  Plaintiff claims disability based upon the following impairments:  severe confusion, seizures, back injury and back disorders, right leg injury, mood disorder, and anxiety.  [AR 98-99, 201]  Plaintiff worked as a construction worker from 1991 through 1999, then as a painter from 2001 through 2005, and finally as a plumber assistant from 2007 through the beginning of 2009.  [AR 110, 202]

### A.    Medical Background

Plaintiff suffers from several physical ailments.[5]  Plaintiff has a history of seizures, has been hospitalized several times after having a seizure, and has suffered from related head injuries.  [*See, e.g.*, AR 104, 111, 279, 302, 317, 349, 354, 497]  Medical records indicate that Plaintiff's seizures are related, at least in part, to alcohol abuse and Plaintiff's noncompliance with his anticonvulsant medications.  [AR 330, 349, 354, 476-77, 490]  Plaintiff also has chronic lumbar spine compression fractures, contributing to lower back pain.  [AR 104, 111, 347, 354, 402]  Physical examinations have additionally revealed osteoporosis, right leg pain, and a right foot drop for which Plaintiff wears an ankle foot orthosis ("AFO").  [AR 111, 316, 355]  In June 2016, Plaintiff was hospitalized after complaining of lower left extremity pain and swelling, and subsequently underwent

---

[4] There is some discrepancy in the record as to whether Plaintiff filed his SSI application on September 29, 2014 [AR 178], or August 14, 2014 [AR 12, 179], and whether Plaintiff's application date was amended to August 11 or August 14, 2014 [*see* AR 12, 99, 178, 197; *see also* AR 34], but any discrepancy is immaterial to the Court's analysis.

[5] Because Plaintiff alleges that the ALJ's errors occurred in assessing Plaintiff's mental impairments, the Court only briefly describes Plaintiff's physical impairments and limitations.

surgery to remove a deep vein thrombosis ("DVT"). [AR 377-78, 411-12] Plaintiff was also treated for a neck hematoma. [AR 391]

In addition to these physical ailments, Plaintiff has been diagnosed with moderate and recurrent major depressive disorder, anxiety disorder, and alcohol and other substance abuse. [AR 368, 371-72, 481] Plaintiff has not received inpatient mental health treatment, and has participated in very limited outpatient treatment as an adult. [AR 105, 367, 477; *see also* AR 431] Plaintiff reports significant memory issues. [AR 216, 219-20, 368, 371, 476] In 2009, Plaintiff suffered a mild traumatic brain injury ("TBI") as a result of a motorcycle accident, but denied noticing any cognitive changes directly following that injury. [AR 476] Instead, Plaintiff estimated the onset of his cognitive problems around 2010. [*Id.*] While providers have noted Plaintiff's memory impairments [AR 316, 327, 504], they also have observed that Plaintiff's memory loss most likely corresponds with psychosocial pressures, including Plaintiff's struggles with homelessness, and Plaintiff's substance abuse, rather than the TBI [AR 476, 480-81, 504].

Plaintiff underwent a neuropsychological evaluation in December 2015, which revealed average to low-average performance across a variety of areas of testing, including intellectual functioning, academic achievement, attention, concentration, and processing speed, memory, language, visual spatial/constructional, and executive functions. [AR 478-80] Plaintiff's memory "also showed a pattern of low immediate recall, or initial learning, of unstructured material[,] with improvement to the normal range with repetition, and good retention." [AR 480] Plaintiff "endorsed depressive symptoms in the severe range, anxiety symptoms in the moderate range, and feelings of hopelessness in the moderate range on self-report measures. [*Id.*]

## B.     Procedural History

Plaintiff's application for SSI was initially denied on December 11, 2014.[6]  [AR 119,

125]  Plaintiff filed a request for a hearing before an ALJ [AR 129], and a hearing was

held before ALJ Rebecca LaRiccia on October 26, 2016, at which Plaintiff and vocational

expert ("VE") Deborah Christianson both testified [AR 30-74].  Plaintiff was represented

by counsel.  [*Id.*]

On December 20, 2016, the ALJ issued a decision denying Plaintiff benefits.  [AR

12-25]  Plaintiff timely requested a review of that decision by the Appeals Council [AR 6,

177], which denied his request for review on September 21, 2017 [AR 1-3].  Plaintiff timely

filed an appeal with this Court on November 27, 2017.[7]  [#1]  Because the Appeals Council

denied Plaintiff's appeal, the ALJ's decision is the final decision of the Commissioner for

purposes of this appeal.  *See* 20 C.F.R. § 404.981.

## C.     The ALJ's Decision

The ALJ denied Plaintiff's application for SSI after evaluating the evidence

pursuant to the five-step sequential evaluation process.  [AR 12-25]  At step one, the ALJ

---

[6] Plaintiff previously filed applications for Social Security benefits in 2006 and 2010, which were also denied.  [*See* AR 78-89, 94-96, 99]  The denial of those applications is not at issue here.  [*See* AR 99]

[7] Without citation, Plaintiff states that his Complaint was filed in this Court on November 22, 2017.  [#15 at 3]  Though Plaintiff's Complaint was actually filed on November 27, 2017, it was nevertheless timely filed.  A plaintiff has 60 days to file a civil action in federal district court for review of the Commissioner's decision, which begins the day after the plaintiff receives the Appeals Council letter.  [*See* AR 2]  To account for mailing time, the Appeals Council assumes the plaintiff receives their letter five days after it is dated.  [*Id.*]  Here, the Appeals Council letter was dated September 21, 2017 and Plaintiff had until September 26, 2017 to receive it.  [*See* AR 1, 2]  The 60-day period for Plaintiff to file an appeal in this Court thus began on September 27, 2017, and ended on November 26, 2017.  Because November 26, 2017 fell on a Sunday, Plaintiff had until Monday, November 27, 2017, to file his appeal, and thus the Complaint was timely.  *See* Fed. R. Civ. P. 6(a)(2)(C).

determined that Plaintiff had not engaged in substantial gainful activity since August 14, 2014, the amended onset date and application date. [AR 14] At step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder, compression fractures of the cervical spine,[8] mild degenerative disc disease, DVT with post-surgery, mood disorder, mild organic mental disorder, mild anxiety, and substance addiction disorder. [*Id.*] At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations. [AR 14-16]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), with limitations on Plaintiff's ability to sit, stand, or walk during an eight-hour work day, and with other restrictions on Plaintiff's ability to lift, carry, push, and pull 20 and 10 pounds. [AR 16 (emphasis omitted)] The ALJ found that Plaintiff "can occasionally operate foot controls, cannot climb ladders, ropes, or scaffolds," and "cannot work at unprotected heights with dangerous moving machinery, or where driving is a requirement of the job." [*Id.* (emphasis omitted)] The ALJ also imposed the limitation that Plaintiff could "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but must avoid concentrated exposure to extreme cold." [*Id.* (emphasis omitted)] Finally, with respect to Plaintiff's mental conditions, the ALJ determined the following restrictions to Plaintiff's RFC: "[Plaintiff] is able to understand, remember, and carry out simple, routine, repetitive tasks that can be

---

[8] The medical record reveals compression fractures in Plaintiff's lumbar spine, rather than in the cervical spine. [*See* AR 104, 111, 347, 354, 402] The ALJ's reference to the cervical spine thus appears to be a typographical error, but Plaintiff does not challenge that finding.

learned on the job in approximately 30 days.  The claimant can have only occasional interaction with co-workers, the general public, and supervisors." [*Id.* (emphasis omitted)]

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work, because the exertional and nonexertional demands of Plaintiff's past relevant work exceeded the limitations of his RFC.  [AR 23]  Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  [AR 24]  Specifically, the ALJ agreed with the VE's testimony opining that Plaintiff could perform the following representative occupations:  price marker, cleaner, housekeeper, document preparer, addresser, and surveillance system monitor.  [*Id.*] Accordingly, the ALJ determined that Plaintiff was not under a disability from August 14, 2014, the date the application was filed, through December 20, 2016, the date of the ALJ's decision.  [AR 25]

III.    **ANALYSIS**

Plaintiff raises two challenges to the ALJ's decision on appeal.  First, Plaintiff contends that the ALJ erred by failing to consider Plaintiff's severe mental impairments in combination at step three.  [#15 at 4-5]  Second, Plaintiff argues that the ALJ erred by failing to properly account for Plaintiff's mental health and cognitive impairments in the RFC analysis.  [*Id.* at 6-8]  The Court addresses each argument in turn.

A.      **Consideration of Plaintiff's Severe Mental Impairments at Step Three**

Plaintiff first asserts that the ALJ did not consider Plaintiff's severe mental impairments in combination at step three.  [#15 at 4-5]  While Plaintiff acknowledges that he did not meet the listing requirements for any of the individual mental health listings, he

argues that his impairments, considered in combination, are medically equivalent to a listed impairment.  [*Id.* at 5]

At step three, the Commissioner must determine whether any of the plaintiff's severe impairments meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations ("the Listings").  *See* 20 C.F.R. § 416.920(a)(4); *Grogan*, 399 F.3d at 1261; *Bailey*, 250 F. Supp. 3d at 784.  To meet a listing, the claimant's impairment must "satisf[y] all of the criteria of that listing, including any relevant criteria in the introduction, and meet[] the duration requirement."  20 C.F.R. § 416.925(c)(3).  The claimant bears the burden of demonstrating that her impairment meets or equals the requirements of a listed impairment, *Fischer-Ross v. Barnhart*, 431 F.3d 729, 732 (10th Cir. 2005), but the ALJ must "articulate the specific reasons for finding that the listing has not been met," *Howarth v. Berryhill*, No. 3:16-CV-1844 (JCH), 2017 WL 6527432, at *8 (D. Conn. Dec. 21, 2017) (citation omitted)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

If none of Plaintiff's severe impairments individually meet a listing, the ALJ must determine whether the "combination of impairments is medically equivalent to" a listed impairment.  20 C.F.R. § 404.1526(b)(3).  But even if the ALJ fails to do so, an ALJ's "inadequate analysis at step three may constitute harmless error if the 'ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.'"  *Hawkins v. Colvin*, No. 2:13-cv-00980-EJF, 2015 WL 1481150, at *8 (D. Utah Mar. 31, 2015) (quoting *Fischer-Ross*, 431 F.3d at 733).

Here, the ALJ found that Plaintiff had the following severe mental impairments: mood disorder, mild organic mental disorder, mild anxiety, and substance addiction disorder. [AR 14] The ALJ considered Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addiction Disorders).[9] [AR 15] The required level of severity for each of these disorders "is met when the requirements in both [paragraphs] A and B" of the particular Listing "are satisfied, or when the requirements in [paragraph] C are satisfied."[10] 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04, 12.06 (2015). The ALJ determined that the evidenced failed to satisfy paragraphs B and C for any of the Listings. [AR 15-16] The ALJ noted Plaintiff's independent bathing, dressing, meal preparation, grocery shopping, cleaning, and laundry, as well as Plaintiff's ability to attend his medical appointments, engage in his hobbies, and maintain good social contact, and determined Plaintiff had only mild restrictions in activities of daily living, and moderate difficulties in social functioning. [AR 15] The ALJ next found that Plaintiff had moderate difficulties with concentration, persistence, or pace, due to his delayed recall, performance in an examination performed by Dr. Stuart Kutz, Ph.D., who examined Plaintiff at the request of the State agency, and Dr. Kutz's suspicion of a mild to moderate underlying cognitive disorder. [AR 16] Finally, the ALJ observed that Plaintiff had no episodes of decompensation for an extended

[9] The Listings have since been superseded, and Listing 12.09 is now reserved, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04, 12.06, 12.09 (2017), but the version of the Listings discussed herein applied at the time of the ALJ's decision.
[10] Listing 12.09 for substance addiction disorders directed adjudicators to the severity requirements set forth in Listings 12.02, 12.04, 12.06, and 12.08 (Personality disorders). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.09 (2015). Because a personality disorder was not at issue here, the ALJ's analysis of all the relevant Listings was the same.

duration, and concluded that Plaintiff did not have an impairment or combination of mental impairments that met or medically exceeded the severity of a listed impairment. [*Id.*]

Plaintiff admits that he did not meet the listing requirements for an individual mental health listing, but contends that his "unique combination of so many moderate impairments across such a wide spectrum of his mental functioning medically equals the listed impairments," pursuant to 20 C.F.R. § 404.1526(b)(3). [#15 at 5] At the outset, Plaintiff has failed to argue with any specificity which combination of his impairments are equivalent to which particular Listing(s).[11] *Cf. Phillips v. Colvin*, 721 F.3d 623, 631 (8th Cir. 2013) ("[Plaintiff] argues that the combination of his low IQ and ADHD is medically equivalent to Listing 12.05 C."); *Laudenbach v. Colvin*, No. 14-771 (ADM/JJK), 2015 WL 853650, at *7 (D. Minn. Feb. 26, 2015) ("Plaintiff contends that the limiting effects of his diabetes, obesity, carpal tunnel syndrome, and leg ulcers, in combination with impairments relating to degenerative joint disease of the right knee, and lumbar

---

[11] Moreover, Plaintiff does not argue that he is incapable of any of the daily activities the ALJ observed that Plaintiff performed, or that he has had any periods of decompensation—factors defeating paragraph B of the Listings. [*See* AR 15-16] Plaintiff also does not explain how his mental impairments, considered in combination, could have satisfied the paragraph C criteria. In other words, even assuming the ALJ failed to consider Plaintiff's mental impairments in combination, it is undisputed that Plaintiff experienced no episodes of decompensation, and that he is capable of independent bathing, dressing, simple meal preparation, grocery shopping, cleaning, doing laundry, attending medical appointments, engaging in hobbies, and visiting with friends. [AR 15-16] Such findings led to the ALJ's conclusion that Plaintiff did not meet the Listings. *See, e.g.*, *Bosko v. Berryhill*, No. CV 17-277, 2018 WL 1508958, at *1 n.1 (W.D. Pa. Mar. 27, 2018) (finding "no merit in Plaintiff's argument that the ALJ erred in failing to find that his impairments me[t] the severity" of Listings 12.02, 12.04, 12.06, and 12.09, where plaintiff did not specify how he "supposedly me[t] the requirements in paragraph B" or C, and where the "ALJ thoroughly discussed Plaintiff's symptoms and treatment" but found the listing criteria was not met); *Laudenbach v. Colvin*, No. 14-771 (ADM/JJK), 2015 WL 853650, at *7 (D. Minn. Feb. 26, 2015) ("[T]he record shows a degree of functioning that precludes determination that [plaintiff] met the listing, either independently or as a combination of all of [p]laintiff's impairments and limitations.").

degeneration, are medically equivalent to the criteria Section 1.02 listing."). Plaintiff's conclusory statement that "the combination of his severe impairments should have been found to medically equal any of" the mental health Listings cited by the ALJ (12.02, 12.04, 12.06, and 12.09) is insufficient. [#15 at 5] *See Wall*, 561 F.3d at 1065 ("To the extent Claimant seeks to argue her impairments, in combination, equal any other listing, she has failed to support this contention with any developed argumentation." (quotation omitted)); *Lee v. Colvin*, No. 1:15-CV-00-917-PK, 2016 WL 4157318, at *15 (D. Or. Aug. 5, 2016) (finding plaintiff had "offered no theory or argument as to how a combination of her impairments meet or exceed Listing 1.04" or "adduced medical evidence to show that her combined impairments equal a Listed impairment"); *Fleming v. Astrue*, No. 1:09CV373, 2010 WL 649742, at *5 (N.D. Ohio Feb. 19, 2010) ("Plaintiff fails to develop an argument on this issue as she points the Court to no evidence showing how her combined impairments may equal a listing and fails to even inform the Court of the Listing that her impairments may meet.").

Furthermore, neither party cites to any authority interpreting the ALJ's responsibility to consider whether a plaintiff's combination of impairments is "at least of equal medical significance" to a Listing, under 20 C.F.R. § 404.1526(b)(3). Some courts have held that an ALJ's "use of the language indicating consideration of an impairment, or combination of impairments," accompanied by analysis of the individual impairments, "is a sufficient basis upon which to conclude that the ALJ considered the combined effect of Plaintiff's impairments." *Smith v. Astrue*, No. CV110-147, 2012 WL 692129, at *8 (S.D. Ga. Feb. 10, 2012) (citing Eleventh Circuit case law), *report and recommendation adopted*, 2012 WL 688426 (S.D. Ga. Mar. 2, 2012); *see also Hutchinson v. Astrue*, 408

F. App'x 324, 327 (11th Cir. 2011) ("The ALJ specifically stated that [plaintiff] did not have an 'impairment, individually or in combination' that met one of the listed impairments [at] step three . . . . That statement shows that the ALJ considered the combined effects of [plaintiff's] impairments during her evaluation."); *Sheline v. Comm'r of Soc. Sec.*, 241 F. Supp. 2d 1206, 1216 (D. Kan. 2002) ("In separately discussing each alleged impairment and Plaintiff's subjective complaints of pain, the Court finds the ALJ sufficiently to have considered all of Plaintiff's impairments in combination with each other."). Other courts have reached the opposite conclusion.[12] *See, e.g.*, *Guzman v. Comm'r of Soc. Sec.*, No. 13-2518, 2015 WL 3965824, at *7 (D.N.J. June 30, 2015) (finding "[a]lthough [the] ALJ . . . sufficiently explain[ed] why Plaintiff's impairments do not meet the . . . listings individually, the ALJ d[id] not provide any analysis or explanation as to why Plaintiff's impairments, when considered in combination, fail to equal a listed impairment," even though the ALJ stated he considered plaintiff's impairments in combination) (citing *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151 (3d Cir. 2008)).

Here, the ALJ specifically found that "[t]he severity of the claimant's mental impairments, considered singly *and in combination*," did not meet or medically equal the criteria of the mental impairment Listings. [AR 15 (emphasis added)] Regardless of whether that statement, coupled with the ALJ's thorough analysis of each individual impairment, satisfied § 404.1526(b)(3), the Court finds the ALJ properly considered the effect of Plaintiff's combined mental impairments throughout her opinion. *See, e.g.*, *Fischer-Ross*, 431 F.3d at 733. After summarizing Plaintiff's various impairments and symptoms, including Plaintiff's memory loss, TBI, cognitive issues, irritability, frustration

---

[12] The Court is unaware of any Tenth Circuit decisions directly addressing this issue.

intolerance, occasional sadness, housing stability stress, and attention, planning, and organizational challenges, the ALJ concluded that "*despite all of these symptoms*, the claimant reported the ability to plan and prepare meal[s], handle daily financial transactions, as well as maneuver public transportation." [AR 20 (emphasis added)] The ALJ further noted that Plaintiff's neuropsychological testing scores were stable relative to predicted scores, and that most of Plaintiff's scores had increased since testing several years prior. [*Id.*] Contrary to Plaintiff' suggestion that the ALJ did not consider the findings of Dr. Jennifer Peraza, Psy. D., that depression and stress could play a role in Plaintiff's daily memory issues [#15 at 5], the ALJ summarized Dr. Peraza's opinion that the onset of Plaintiff's cognitive problems was more likely due to psychosocial stressors (*i.e.*, Plaintiff's homelessness), than Plaintiff's TBI. [AR 21] The ALJ also took into account Plaintiff's alcohol abuse, Dr. Kutz's reports, and Plaintiff's daily activities. [AR 21-22] The ALJ even went so far as to assume more pronounced difficulties in Plaintiff's mental functioning than the doctors examining Plaintiff had reported. [AR 22 (accounting for moderate difficulties in social functioning and concentration, persistence or pace, "although the claimant's depression, anxiety, and [TBI] were assessed as mild in nature," because of Plaintiff's treatment for depression with prescription medication, slow responses to certain questions, and mild to moderate impairments in his attention and concentration); AR 23 (noting Dr. Kutz's opinion that Plaintiff was mildly to moderately impaired in attention, concentration, and social adaptation, but "reduc[ing] the claimant's [RFC] to simple, routine, repetitive work," "due to the claimant's difficulties in performing some items on the mental status examination, and in giving the claimant the benefit of the doubt")]

In short, the ALJ's "thorough review of the medical records . . . demonstrates that [s]he considered [plaintiff's] impairments individually and in combination." *Moore v. Astrue*, No. 1:09-CV-306-SA-SAA, 2010 WL 2838404, at \*5 (N.D. Miss. July 1, 2010); *report and recommendation adopted*, 2010 WL 2838400 (N.D. Miss. July 19, 2010); *see also Campbell v. Barnhart*, 56 F. App'x 438, 441-42 (10th Cir. 2003) (finding a "review of the ALJ's opinion shows that he discussed all of plaintiff's impairments in his evaluation of her RFC and considered all of plaintiff's alleged exertional and non-exertional impairments in combination," and concluding plaintiff was "essentially asking . . . th[e] court [to] reweigh the evidence relating to her depression," which the court could not do). *Cf. Taylor v. Callahan*, 969 F. Supp. 664, 670 (D. Kan. 1997) (reversing ALJ's decision where "ALJ never mentioned the numerous conditions, besides diabetes and cardiac arrhythmia, which afflict[ed] plaintiff," even though plaintiff claimed he was primarily disabled from diabetes and "the residual consequences therefrom" (quotation omitted)). For these reasons, the ALJ's determination that Plaintiff's mental impairments did not individually or collectively meet or medically exceed a listing was supported by substantial evidence, and the ALJ applied the appropriate legal standards in making that determination.

### B.    Whether Mental Impairments Were Properly Reflected in the RFC

Plaintiff next argues that he has "much more significant limitations" with respect to his mental health and cognitive impairments "than were accounted for" by the ALJ in the RFC. [#15 at 6]  As noted above, at step four, the Commissioner must determine whether the claimant's RFC—the functional capacity the claimant retains despite her impairments—is sufficient to allow the claimant to perform her past relevant work, if any.

See 20 C.F.R. § 416.920(a)(4); *Grogan*, 399 F.3d at 1261; *Bailey*, 250 F. Supp. 3d at 784. In formulating an RFC, the ALJ must consider the combined effect of both severe and non-severe impairments, and review all of the evidence in the record. *Wells*, 727 F.3d at 1065; *see also* 20 C.F.R. § 404.1545(a)(2), (3). The ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).

Here, the ALJ formulated the following RFC with respect to Plaintiff's mental limitations: "He is able to understand, remember, and carry out simple, routine, repetitive tasks that can be learned on the job in approximately 30 days. The claimant can have only occasional interaction with co-workers, the general public, and supervisors." [AR 16 (emphasis omitted)] Plaintiff argues that the RFC gave "no consideration for his low average intellectual functioning, inability to read, his low level of education[,] nor other cognitive and mental health limitations identified by both Dr. Kutz and Jennifer Peraza." [#15 at 7] Plaintiff further contends that the jobs identified by the VE and adopted by the ALJ require a level of reasoning that exceeds Plaintiff's cognitive ability. [*Id.*]

### 1. Intellectual Functioning

With respect to Plaintiff's intellectual functioning, the ALJ confirmed at the hearing that Plaintiff could cook, clean, and pay his bills on his own [AR 50], and that Plaintiff spent time with friends, and participated in hobbies, including collecting comic books and listening to music [AR 52]. The ALJ reiterated these findings in her opinion. [*See* AR 15 (finding Plaintiff "was capable of independent bathing, dressing and simple meal preparation," as well as grocery shopping, cleaning, laundry, attending medical

appointments, engaging in hobbies, reading, and listening to music, and recognizing Plaintiff's good social contact); AR 20 (noting that despite Plaintiff's reports of cognitive and emotional problems, Plaintiff also "reported the ability to plan and prepare meal[s], handle daily financial transactions, as well as maneuver public transportation")]  The ALJ concluded that Plaintiff had "moderate difficulties" in "social functioning and concentration, persistence, or pace, and provided for limitations" in the RFC "that would accommodate these moderate difficulties."  [AR 22]

Plaintiff does not explain why the RFC, limiting him to understanding, remembering, and carrying out simple, routine, and repetitive tasks, is inconsistent with his intellectual functioning, nor does he explain which "additional limitations" the RFC should have included [#15 at 8].  *Doty v. Astrue*, No. 11-cv-01342-PAB, 2012 WL 4511396, at *3 n.2 (D. Colo. Sept. 30, 2012) (finding plaintiff failed to explain why the RFC limiting her to simple, unskilled work was inconsistent with her limited intellectual functioning); *see also Miera v. Colvin*, No. 2:12-CV-317-RJS, 2015 WL 687310, at *7 (D. Utah Feb. 18, 2015) (holding that an expert's report, which revealed plaintiff's limited intellectual ability, but also his substantial daily activities, "provided substantial evidence to support the ALJ's conclusion that [plaintiff] should be capable of performing simple types of work activity despite having some difficulty with complex work").  Nor can the Court find any evidence in the record suggesting that the RFC did not adequately account for limitations in Plaintiff's intellectual capability.

## 2.  Illiteracy and Education

Plaintiff also contends that the RFC did not properly account for his "inability to read" and "his low level of education."  [#15 at 7]  Generally, "if there is no other evidence

to contradict it," the ALJ will use the claimant's numerical grade level to determine his educational abilities, and how well the claimant is able to communicate in English. 20 C.F.R. § 416.964(b). Plaintiff completed tenth grade [AR 202], which corresponds to "a limited education" level, meaning "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3). At the hearing, the ALJ confirmed that Plaintiff had completed tenth grade [AR 35], and asked the VE to "assume a person who . . . has a 10th grade education" [AR 70]. The ALJ concluded in her opinion that Plaintiff had "a limited education and [wa]s able to communicate in English." [AR 24 (emphasis omitted) (citing 20 C.F.R. § 416.964)] Again, Plaintiff fails to articulate how the RFC limiting him to "simple, routine, repetitive tasks" conflicts with his limited education, and Plaintiff does not claim that his reading level is inconsistent with his tenth grade education. *Cf. Finney v. Comm'r of Soc. Sec. Admin.*, No. CIV-16-488-SPS, 2018 WL 1505497, at *4, *5 (E.D. Okla. Mar. 27, 2018) (finding ALJ's decision was not based on substantial evidence where ALJ failed to reconcile Plaintiff's ninth grade education with extensive evidence in the record that plaintiff was "at best, reading at a first grade level").

Moreover, Plaintiff's contention that he cannot read is plainly contradicted by the record. Plaintiff completed the SSA Disability Report form, indicating that he could read and understand English. [AR 200] Although Plaintiff scored in the low average range for basic word reading skills, reading comprehension, and "[s]peeded word reading," he had tenth grade reading equivalents and demonstrated average vocabulary. [AR 479] He further reported that he was "always reading." [AR 232] The ALJ explicitly considered

that Plaintiff "performed in the low average range for basic word reading skills" as "compared to age-related peers" [AR 20], but also noted that Plaintiff "reported . . . reading" as one of his hobbies [AR 15]. Again, the ALJ found that Plaintiff was capable of handling daily financial transactions. [AR 20] None of these findings indicate that Plaintiff is unable to read. *See, e.g.*, *Slaughter v. Colvin*, No. 13-2203-JWL, 2014 WL 3557633, at *5 (D. Kan. July 18, 2014) (finding no error where ALJ concluded plaintiff had a limited education but was not illiterate, because plaintiff's "testimony indicate[d] that he was able to read and write sufficiently to" answer questions on an SSA form, pay bills, handle a savings account, and had an eleventh grade education, which was "contrary to the general understanding [in the Social Security regulations] that 'illiteracy' presumes little or no formal schooling").

### 3. Opinions of Dr. Kutz and Dr. Peraza

Third, Plaintiff argues that the RFC did not consider "other cognitive and mental health limitations identified by both Dr. Kutz and Jennifer Peraza." [#15 at 7] Plaintiff contends that in the RFC, "the ALJ posed boiled down limitations that are mere lay opinion on the ALJ's behalf[,] not a carefully culminated hypothetical based on substantial medical evidence." [*Id.*] Contrary to Plaintiff's arguments, the ALJ thoroughly reviewed the medical evidence and discussed Dr. Kutz and Dr. Peraza's opinions in detail. [AR 20-23] The ALJ summarized an extensive series of neuropsychological tests that Dr. Peraza conducted on Plaintiff in December 2015. [AR 20-21] The ALJ noted Dr. Peraza's conclusion of Plaintiff's "average performance across all domains with the exception of low average processing speed" [AR 21], and that generally, Plaintiff's scores were "stable" compared to a prior evaluation in 2011, with all scores "in the direction of improvement

with nearly a full standard deviation of improvement in overall process speed" [AR 20]. The ALJ also discussed Dr. Kutz's findings that Plaintiff "did not present with any clear, acute depression, and diagnosed depressive disorder not otherwise specified," "mild anxiety disorder, not otherwise specified," average to low average memory recall, mildly to moderately impaired attention and concentration, and a likely mild to moderate underlying cognitive disorder.  [AR 21-22]

In concluding that Plaintiff had moderate difficulties in social functioning, and concentration, persistence, or pace, the ALJ gave great weight to Dr. Kutz's opinions, and imposed even greater restrictions in the RFC than suggested by Dr. Kutz, limiting Plaintiff to simple, routine, repetitive work, after giving Plaintiff "the benefit of the doubt" and noting Plaintiff's "difficulties in performing some items on the mental status examination."  [AR 23; *see also* AR 22 (finding "moderate difficulties" in social functioning and concentration, persistence, or pace, and "provid[ing] for limitations in the claimant's [RFC] determination that would accommodate these moderate difficulties" even though Plaintiff's "depression, anxiety, and [TBI] were assessed as mild in nature")]    The ALJ also gave "great weight" to the neuropsychological evaluation performed by Dr. Peraza.  [AR 23]

"Plaintiff has cited to no evidence that would indicate greater functional limitations than those contained in the [RFC] findings, and, based on the medical evidence in the record, the Court can find none."  *Shields v. Colvin*, No. 14-cv-9-TLW, 2015 WL 1482549, at *5 (N.D. Okla. Mar. 31, 2015) (finding RFC was "consistent with the medical opinion evidence from the treating and consultative examining physicians" and "more limiting than the opinions of the non-examining agency physicians").

## 4. Alternative Jobs Identified by VE

At step five, the ALJ adopted the VE's testimony that there are significant numbers of jobs that Plaintiff can perform in the national economy, including document preparer. [AR 24; *see also* AR 71-72] Plaintiff alleges that a general education development ("GED") reasoning level of three, required to be a document preparer, exceeds Plaintiff's cognitive ability. [#15 at 7]

GED reasoning levels "do not describe the specific mental or skill requirements of a particular job," but rather define "the general educational background that would ordinarily make an individual suitable for the job." *Mills v. Berryhill*, No. 2:16-cv-01209-DBP, 2017 WL 4857553, at *5 (D. Utah Oct. 25, 2017). Courts in this Circuit have held that a GED level of 3 is consistent with an RFC limitation to "simple, repetitive tasks," if the VE testifies that her testimony is consistent with the job information from the Dictionary of Occupational Titles ("DOT"). *Id.*; *see also Blanchard v. Astrue*, No. 09-1143-SAC, 2010 WL 2925180, at *11-12 (D. Kan. July 21, 2010).

Here, the VE stated that her testimony was consistent with the DOT.[13] [AR 73] Even assuming there was such a conflict in the VE's testimony and the DOT, and setting aside the authority contradicting Plaintiff's contention that a GED level 3 exceeds an RFC of simple and routine tasks, Plaintiff's argument would still fail. In addition to document preparer, the ALJ identified five other jobs that Plaintiff could perform, at least three of

---

[13] Plaintiff did not challenge the VE's testimony during the hearing, and "should not be permitted to scan the record for implied or unexplained conflicts" between the VE's testimony and "the voluminous provisions of the DOT," and now "present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Blanchard*, 2010 WL 2925180, at *11 (citing *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. 2003)). Even assuming Plaintiff had not waived this argument, it fails for the reasons discussed above.

which have GED levels of one or two. *See, e.g.*, DOT 209.587-010 Addresser (GED level 2), DOT 209.587-034, Marker (GED level 2, including price marker); DOT 323.687-014, Cleaner, Housekeeping (GED level 1); DOT 381.687-014 Cleaner, Commercial or Institutional (GED level 1). Plaintiff does not argue that such GED levels exceed the RFC limiting Plaintiff to simple and routine tasks, or his cognitive ability, and the Tenth Circuit has noted that a "level-two reasoning appears . . . consistent" with an RFC of simple and routine tasks. *Hackett*, 395 F.3d at 1176; *see also Alstatt v. Colvin*, No. CIV-13-0675-HE, 2014 WL 1668599, at *5 (W.D. Okla. Apr. 24, 2014) (finding harmless error, "even if the mental limitations included in the ALJ's RFC finding would preclude the performance" of several of the jobs identified by the VE, when "there is nothing in the RFC finding that would preclude the performance" of at least one other job identified by the VE).

The Court thus finds that the ALJ applied the correct legal standards in evaluating the medical evidence, and developing Plaintiff's RFC, and that the RFC is supported by substantial evidence.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner that Plaintiff was not under a disability within the meaning of the SSA from August 14, 2014 through December 20, 2016.


DATED:  December 12, 2018                    BY THE COURT:

                                             s/Scott T. Varholak_____
                                             United States Magistrate Judge